## Craft Engineering Co., Inc., v. Messa et ux.

*Raymond Pearlstine*, for plaintiff.
*John E. Flynn*, for defendants.

KNIGHT, P. J., August 9, 1949.—This is an action in assumpsit, brought by plaintiff, to recover from defendants the sum of $3,245.16, with interest, which it alleges as the balance due on a promissory note given and executed by defendants to plaintiff company, for

$6,521.76, dated January 10, 1946, and payable five months after date.

Defendants admit the execution of the note, but contend that there is nothing due plaintiff by reason of certain set-offs and counterclaims, as will appear in the findings of fact and discussion.

### The Facts

1. Plaintiff is a corporation, and during World War II was engaged in the manufacture of airplane parts.

2. Defendant Matthew A. Messa was an officer and director of plaintiff company, and in December 1945 was the general manager of its plant at Lansdale.

Defendant Dorothy P. Messa is the wife of Matthew A. Messa.

3. On December 12, 1944, plaintiff company made formal application to the stabilization unit of the Bureau of Internal Revenue, to increase the salary of certain of its officers and key employes. As to Matthew A. Messa the request was that the company be permitted to pay him a salary of $15,000 per year, and a bonus not exceeding $5,000 per year, to be paid so long as the production of the company averaged $75,000 per month.

4. On January 13, 1945, the stabilization unit approved a salary of $10,000 per year to M. A. Messa, effective December 12, 1944, and approved a bonus to Mr. Messa for the year 1944, of $3,500.

5. The production of plaintiff company exceeded an average of $75,000 per month during the year 1945.

6. It was agreed by Mr. Messa and the corporation that Messa's salary as general manager should be $10,000 per annum, plus a bonus of $3,500, if the production of the corporation averaged $75,000 per month during 1945.

The production did average that amount during that year.

7. The company had issued to Matthew A. Messa 10 shares of its capital stock, being one fifth of the entire capital of the company, and Mr. Messa assigned these shares to his wife, Dorothy P. Messa.

8. On August 10, 1945, a check was issued on the funds of the corporation, signed by Matthew A. Messa, vice president, and William Clarke, treasurer, to the order of Matthew A. Messa, for $1,660.20, representing one half of the $3,500 bonus for the year 1945, less certain withholding deductions required by law.

9. On August 23, 1945, the board of directors of the corporation resolved that "where permissible and advisable" salaries of employes should be reduced. Matthew A. Messa voluntarily submitted to a reduction of his salary to $7,500 per year. Nothing was said about the bonus.

10. On December 20, 1945, the board of directors of the corporation (Mr. Messa was not voting) resolved to accept the offer of defendants of $12,521.76 for the lease of the property occupied by the corporation, and certain machinery.

The above amount was to be paid as follows: $4,000 at the time of the execution of the agreement of sale; $2,000 on January 10, 1946, after which a bill of sale was to be given to defendants for the personal property purchased; the balance, $6,521.76, to be represented by a note of defendants.

11. On December 21, 1945, at a meeting of the directors of plaintiff company, defendant Matthew Messa presented his resignation as a director of the company.

At the same meeting it was resolved "that the offer of Dorothy P. Messa and others to sell their shares of stock in the company, to the corporation, at a price of $1,587 per share, subject to adjustment upward

or downward to reflect variations between book figures and ultimate values realized on assets and actual amounts required to meet all liabilities heretofore incurred, be and the same is hereby accepted".

The officers were instructed to prepare and execute appropriate agreements to carry out this sale.

12. The agreement mentioned in the above finding was executed by the company and defendant Dorothy P. Messa, on December 21, 1945, and was on the same day assigned to the company by Mrs. Messa as security for the payment of a balance of $6,521.76 due for machinery and equipment purchased by Mr. and Mrs. Messa. (See finding 10.)

13. Plaintiff agreed to pay for the stock of Mrs. Messa, as follows: $400 per share at the signing of the agreement; $950 per share on January 10, 1946, and the balance on June 10, 1947.

Defendant, Dorothy P. Messa, has received $6,000 on account of the purchase price of her stock.

14. On January 9, 1946, David B. Markowitz, accountant for plaintiff company, submitted an analysis of the changes of the net worth of the company from November 1, 1945, to December 31, 1945, and computed the value of each share as of the latter date, as $927.66.

15. The fiscal year of the corporation closed on May 31st. As of December 31, 1945, the income tax due by the corporation was $24,480.57, and this was the amount used by the accountant in figuring the net worth of the company as of December 31, 1945. The actual amount of income tax paid by the corporation for the year 1945 was $16,834.33. The difference, $7,646.34, was the result of losses suffered by plaintiff corporation between January 1, 1946, and May 31, 1946.

16. In fixing the value of $927.66 per share, the accountant charged the stockholders depreciation during the period from November 1, 1945, to December 31, 1945, in the sum of $105.23.

17. On August 1, 1945, the corporation paid an annual retainer fee to the law firm of Shapiro & Shapiro, covering services for the fiscal year June 1, 1945, to May 31, 1946.

This was charged off as an expense.

18. In the accounting (finding 14) the stockholders were charged $5,900, which purported to be an income tax liability to the Federal Government.

The item has not been paid, but is now the subject of dispute and negotiation between the Government and the corporation.

19. There is due from plaintiff company to defendant, Matthew A. Messa, for the period from July 1, 1945, to December 31, 1945, a bonus of $1,750, less any withholding charges and other deductions required by law.

### Discussion

During the trial of this case, counsel informed the trial judge that they would agree on a number of points which might affect the final verdict. We have therefore found only such facts as we deem necessary to decide the contested issues presented to us.

They are:

1. In arriving at the value of the stock of plaintiff company, as of December 31, 1945, should the figure $24,480.57 be taken as the tax liability of the stockholders, or the figure of $16,834.23, which was the actual amount of tax paid?

2. Should the item of $105.23 charged as depreciation, be allowed as a deduction, in arriving at the value of the stock?

3. Should the fee of $5,000 to Shapiro & Shapiro be apportioned to December 31, 1945?

4. Should plaintiff be allowed a credit of $5,900 for the disputed tax liability to the Federal Government?

5. Should Matthew A. Messa be allowed a bonus of $1,750 for the period between July 1, 1945, and December 31, 1945?

The answer to the first question involves an interpretation of the agreement between plaintiff company and Dorothy A. Messa, dated December 21, 1945, (finding 12). That agreement provides as to tax liability, as follows:

"The parties recognize that the adjustments hereinbefore referred to will require further adjustment in the amount of tax liability shown on the statement and that the continued operation of the company will require an equitable apportionment of the tax liability between them so as to equitably reflect the value of their stock as of the date of this agreement and they have therefore, agreed on the following formula as the basis for determining the amount of tax liability which is to be substituted for the reserve shown on the statement, to wit: the entire income tax for the fiscal year ending May 31, 1946, less the tax on the income from the manufacture and sale of its products for the period beginning January 1, 1946 and ending May 31, 1946, computed at rates in effect for the year 1946."

The intention of the parties as expressed in the agreement was to fix an agreed value of the stock as of December 31, 1945. This was the design and purpose of the agreement.

The writing does not, in express terms, say what effect is to be given to losses sustained by the corporation between January 1, 1946, and May 31st of the same year: it only contemplates the tax on income for that period.

There was no income for that period, on the contrary, the corporation suffered losses, which reduced its tax liability for the fiscal year to $16,834.23. Had these losses not occurred, the tax liability as of December 31, 1945, would have been $24,480.57.

Bearing in mind that the very purpose of the agreement was to fix a value of the stock as of December 31, 1945, we are of the opinion that the figure of $24,480.57 is the proper figure, otherwise, so far as the tax liability is concerned, the value of the stock would be fixed as of May 31, 1946, instead of December 31, 1945.

It seems unfair and unjust that Mrs. Messa should profit through the losses of the corporation in which her stock did not share. We do not think any such result was contemplated by the parties, or expressed in the agreement.

This interpretation finds further support in section 3, par. 2(b), of the agreement, which provides that the value of the stock may be raised or lowered by operating losses or profits suffered or made during the period from November 1, 1945, to December 31, 1945. Nothing in the agreement provides for losses incurred subsequent to December 31, 1945.

We will now consider the item of $105.23 charged as depreciation suffered in the period between November 1, 1945, and December 31st of the same year.

The agreement of December 21, 1945, subparagraph 2 of paragraph 3, provides for certain contingencies which might affect the price of the stock between the two dates, but declares there shall be no allowance or adjustment for depreciation. We therefore find that plaintiff is not entitled to the benefit of this item.

The next question has to do with the annual retaining fee paid the law firm of Shapiro & Shapiro, to cover legal services during the year from June 1, 1945, to May 31, 1946. The corporation charged this off as an expense when paid: defendants contend it should be

apportioned to December 31, 1945, and only seven twelfths of the fee charged to the stockholders.

Strictly construed a retaining fee is not paid for services rendered, it is an option on a lawyer's services for a stated time: commonly it covers general advice over the period, but does not include services in litigated cases. We do not believe this fee should be apportioned like rent, taxes or fire insurance premiums in a real estate settlement.

While there is no evidence on the point, we take it that it was the business practice of the corporation to charge the entire retaining fee to expense at the time it was paid, and defendants as stockholder and officer, apparently made no objection to this procedure.

In our opinion, plaintiff is entitled to credit for the full fee of $5,000.

The fourth question pertains to an item of $5,900, being the amount in dispute of an income tax of the corporation. Plaintiff has taken credit for this amount although while claimed by the Government, has not actually been paid.

The money should be placed in escrow or satisfactory security given defendant, Dorothy P. Messa, that an accounting will be made to her after the claim of the Government is settled.

The last question involves the bonus of $1,750 which defendant, Matthew A. Messa, claims due to him for the period between July 1, 1945, and December 31, 1945.

Plaintiff, Craft Engineering Co., Inc., was engaged in war work and the salaries paid its officers and key employes under the war time regulations, had to be approved by the Treasury Department of the United States Government.

Sometime prior to January 13, 1945, the Craft Engineering Co., Inc., had made application to the salary stabilization unit of the Bureau of Internal

Revenue for the approval of salaries it proposed to pay to a number of its officers and employes. The application, so far as Matthew A. Messa was concerned, was for approval to pay him a salary of $15,000 per year, and a bonus of not exceeding $5,000 per year, to be paid so long as the production of the company averaged $75,000 per month or more.

On the above date approval was granted to pay M. A. Messa a salary of $10,000 per year and approval was also granted to pay Mr. Messa a bonus for the year 1944 of $3,500.

Mr. Messa sent the letter of approval to Abraham L. Shapiro, the secretary of plaintiff company, who on January 17, 1945, replied, suggesting that the new schedule be put into effect at once, and that he draw a check to himself for $3,500, representing the bonus for the year 1944.

As to the bonus for 1945, the letter states: "I assume that, at the end of the year (the letter was written in January 1945) a bonus will be paid, in accordance with our understanding unless, in the mean time, some new Treasury regulation is adopted."

Mr. Messa testified that on several occasions during 1945 he talked with officers of the Craft Company about his bonus, and that the "understanding" was that he was to receive the same bonus in 1945.

These conversations are denied by Mr. Shapiro, the secretary of the company. The president, Mr. Clarke, says he has no recollection of any such conversations.

On August 10, 1945, a check was drawn on the funds of plaintiff company, signed by M. A. Messa, as vice president and William Clarke as treasurer, in favor of Mr. Messa for $1,660.20, representing one half the bonus of $3,500, less certain withholding deductions, as required by law.

In August of 1945, the directors of plaintiff company decided that salaries should be reduced, and M. A. Messa agreed to accept a reduction of $2,500 per

annum, which became effective in October of 1945. Mr. Messa took an active part in the proceedings in reference to the renegotiation of the company's contracts after the war, but his participation had to do with the technical aspects of the contracts and not with the financial elements involved.

No claim for the bonus for the last six months of 1945 was made by Messa until October 1947, and no such claim was set up in the renegotiation proceedings, but the evidence shows that the question of the value of the stock in plaintiff company as of December 31, 1945, was not entirely settled when this suit was brought.

While the item of $3,500 is termed a bonus, it seems clear that the contract of employment between Messa and the company called for a salary of $10,000 per annum, plus a bonus of $3,500 so long as the production of the company averaged $75,000 per month.

It is true that Messa voluntarily reduced his salary to $7,500 per year, in October 1945, and his conduct would indicate that he may not have expected to receive any bonus for the last six months of 1945; still we cannot say that the evidence supports a finding that he waived his right to a bonus for that period.

The bonus payment required the approval of the salary stabilization unit, and it will be noted that the approval for the year 1944 was granted in January 1945. It is reasonable to infer that the bonus for 1945 would be considered at the end of that year, or early in 1946. At the latter date no approval was required under the law.

We have therefore come to the conclusion and found as a fact, that M. A. Messa was entitled to receive his bonus for the year 1945, and that he should be paid the balance due at this time.

At the trial it was agreed by counsel that certain disputed items should be ignored by the trial judge, and that counsel would dispose of these items by agree-

ment. We therefore cannot render a verdict or decision for either party, but will direct that counsel for both sides join in a stipulation for a decision in conformity with the facts found by the trial judge and the above discussion.

The joining in such stipulation shall in no wise prejudice either side or affect in any way the right of any party to file exceptions.

And now, August 9, 1949, counsel will prepare and submit a stipulation as above directed.